FELIX ST. ANNA GOVIN and Others, Respondents, *v.* LUCIANA GOVIN DE MIRANDA, Individually and as Executrix, etc., of FELIX GOVIN Y PINTO, Deceased, Appellant.

*Res adjudicata — interest presumptively follows the ownership of the contract — declaration of trust — Statute of Limitations — judgment in replevin for the recovery of bonds — when not a bar to the recovery of interest collected thereon.*

The conclusiveness of a judgment rendered in an action cannot be destroyed by showing, in a second action between the same parties, that a fact existed which, had it been proved in the first action, would have resulted in a wholly different judgment.

The interest payable by the terms of a contract is but an incident thereof, and presumptively belongs to whoever owns the contract when the interest falls due. Such presumption may be rebutted and overthrown by showing that the owner has assigned the interest due or becoming due, and, in case such interest is payable upon the presentation of coupons, by showing that they have been detached and transferred by the owner.

Where, in an action to recover certain bonds or the value thereof, it was determined that the plaintiffs were the owners of such bonds, in a subsequent action brought by the same plaintiffs against the same defendant to recover the interest on such bonds, collected by the defendant or her testator, the question as to the ownership of the bonds cannot be raised, although it appears in the second action that the testator had purchased and paid for the bonds in dispute, which fact was not shown on the former trial.

After the death of a testator there was found in his safe a sealed envelope, on which there was the following indorsement: "A declaration in favor of Emilia, Felix, Guillermina Govin and Luz Diaz y Sanchez, who lived in 147 E. 39th street." This envelope contained an instrument of which the following is a copy:

"In possession of Ramon M. Estevez there are sixty thousand dollars in U. S. bonds, which I declare belong to the three children, brother and sisters, Emilia, Felix and Guillermina Govin, residents of this city, living at 147 E. 39th St. Besides, in my box there is a legacy which contains $29,000 R. R. bonds, Iowa Division; of these ten thousand belong to Luz Diaz y Sanchez, mother of the above-mentioned individuals; she has a note for same signed by me, and the rest belongs to the above-mentioned Emilia, Felix and Guillermina in equal parts.

"No one may go contrary or against this declaration, as it is based under conscience and justice; to me alone is reserved the right to do with this money as I deem proper.

"NEW YORK, *Dec. 8th,* 1883.          FELIX GOVIN Y PINTO.

"Acknowledged before me this 15th ⎫
     day of December, 1883.     ⎬
          " JAS. W. HALE,
            " *Notario Publico,*
             "4 Hanover St."

*Held,* that the words "No one may go contrary or against this declaration, as it is based under conscience and justice; to me alone is reserved the right to do with this money as I deem proper," were not intended to limit but to make certain the rights of the beneficiaries, and was an assertion by the declarant that he had the right to do as he chose with the bonds, and that third persons had no right to question the disposition which he made of them, and the declarant did not reserve or intend to reserve to himself thereby the right to dispose of the accruing interest on the bonds which he declared belonged to the beneficiaries in such declaration named.

The Statute of Limitations does not run in favor of a trustee as against his beneficiaries, until the trustee has refused to execute the trust.

The judgment recovered in a replevin action brought to obtain the possession of certain bonds or the value thereof, is not a bar to a subsequent action, brought against the defendant in the replevin suit, to recover the amount of interest which she or her testator collected on such bonds, where it appears that the defendant's testator never refused to deliver the bonds to the plaintiffs, but held the securities as their agent, and that the defendant, his executrix, did not convert the bonds until she refused to deliver them up upon the demand of the plaintiffs. In such case the collection of the interest by the testator and his executrix before the refusal of the latter to deliver the bonds to the plaintiffs was not a wrongful but a legal act, and the liability of the defendant and her testator to account as agent for the collection of interest made formed no part of the claim for damages for the wrongful detention of the bonds.

APPEAL by the defendant, Luciana Govin de Miranda, individually and as executrix, etc., of Felix Govin y Pinto, deceased, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 15th day of February, 1894, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit, and also from an order made on the 12th day of February, 1894, and entered in said clerk's office, denying the defendant's motion for a new trial made upon the minutes.

*Edward C. James*, for the appellant.

*Abram Kling*, for the respondents.

FOLLETT, J. :

Prior to December 8, 1883, Felix Govin y Pinto purchased and paid for thirty-eight coupon bonds issued by the Chicago, Burlington and Quincy Railroad Company for $1,000 each, bearing interest at the rate of four per cent per annum, payable semi-annually, the payment of which was secured by a mortgage upon the Iowa division of said corporation.

On the 8th of December, 1883, Felix Govin y Pinto executed an instrument, written by himself, of which the following is a copy : .

" In possession of Ramon M. Estevez there are sixty thousand dollars in U. S. bonds, which I declare belong to the three children, brother and sisters, Emilia, Felix and Guillermina Govin, residents of this city, living at 147 E. 39th St. Besides, in my box there is a legacy which contains $29,000 R. R. bonds, Iowa Division ; of these ten thousand belong to Luz Diaz y Sanchez, mother of the above-

mentioned individuals; she has a note for same signed by me, and the rest belongs to the above-mentioned Emilia, Felix and Guillermina in equal parts.

"No one may go contrary or against this declaration, as it is based under conscience and justice; to me alone is reserved the right to do with this money as I deem proper. '

"NEW YORK, *Dec. 8th,* 1883.    FELIX GOVIN Y PINTO.

"Acknowledged before me this )
    15th day of December, 1883. )
        "JAS. W. HALE,
           "*Notario Publico,*
             "4 Hanover St."

This instrument was sealed in an envelope on which was the following indorsement: "A declaration in favor of Emilia, Felix, Guillermina Govin and Luz Diaz y Sanchez, who lived in 147 E. 39th street."

May 23, 1891, Felix Govin y Pinto died at the city of New York, leaving a last will and testament, which was duly probated November 20, 1891, and letters testamentary thereon were on that day issued to the defendant, who accepted the trust and entered on the execution thereof. After the death of the testator the declaration of trust, sealed in an envelope and indorsed as above stated, was found in the safe, and there were also found in the vault of a safe deposit company thirty-eight bonds of the Chicago, Burlington and Quincy Railroad Company of the kind above described. The testator collected the interest which fell due on these bonds during his lifetime, and subsequent to his death the interest was collected by the defendant.

It is conceded that the testator in his lifetime supported the plaintiffs in this action, who with their mother, Luz Diaz y Sanchez, lived together as a family at No. 147 East Thirty-ninth street, New York city.

Whether the testator and the plaintiffs' mother were married is a disputed question.

January 13, 1892, the plaintiffs demanded that the defendant deliver to them nineteen of the Chicago, Burlington and Quincy bonds, which was refused, and March 25, 1892, these plaintiffs

brought against this defendant an action in replevin for the recovery of the bonds, in which an issue was joined and resulted in a judgment for the recovery of the bonds, or, in default of their delivery, for the recovery of their value ($17,950), with interest thereon at the rate of six per cent per annum from January 13, 1892, to February 27, 1893, the date of the trial of that action, which judgment was affirmed December 22, 1893, by the Court of Appeals. (140 N. Y. 474.) Whether the bonds have been restored or the judgment for their value paid does not appear.

On the 22d of August, 1893, this action was begun to recover the interest on the nineteen bonds collected by the testator in his lifetime and by the defendant as his executor, with interest on the sums so semi-annually collected. On the trial a verdict was directed for $12,034.80, which amount seems to have been agreed upon, or, at least, not contested. How much of this sum was for coupons collected by the testator, or how much for coupons collected by the defendant, does not appear, nor does the record disclose the particular semi-annual payments of interest covered by the verdict or the amount allowed for interest on such semi-annual payments as were included in the sum recovered.

It has been finally determined in the replevin action that the plaintiffs on the 8th of December, 1883, were and have since remained the owners of nineteen of the bonds of the Chicago, Burlington and Quincy railroad, which judgment is conclusive of the question of title to the bonds, and cannot be litigated in this action.

The fact that it appears in this case that the testator, prior to December 8, 1883, purchased and paid for the bonds in dispute, which fact was not shown on the former trial, does not authorize this court to reconsider the question of ownership. If this fact is a controlling one upon the rights of the litigants, the defendant should have proved it on the trial of the former action, or, if unknown at that date, she should have moved for a new trial on the ground of newly discovered evidence. The conclusiveness of the first judgment cannot be destroyed by showing that a fact existed which, had it been proved, would have produced a wholly different judgment. (*The Williamsburgh Savings Bank* v. *The Town of Solon*, 136 N. Y. 465.) This rule is so elementary that it does not need to be supported by the citation of cases. To hold the contrary would

destroy the effect of judgments and permit questions once settled to be re-litigated upon the discovery of some new fact.

It being conceded that the defendant and her testator collected the interest on plaintiffs' bonds, it is difficult to see on what theory the defendant can escape a judgment for the recovery of the amount so collected without establishing an affirmative defense.

The interest payable by the terms of a contract is but an incident thereof and presumptively belongs to whoever owns the contract when the interest falls due. This is a rebuttable presumption which may be overthrown by showing that the owner had assigned the interest due or becoming due, and in case it is payable upon the presentation of coupons, that they have been detached and transferred by the owner. There is no evidence in this case indicative of an intention on the part of the plaintiffs to relinquish the interest, and the only fact to which we are referred tending to show that the interest belonged, not to the plaintiffs, but to the testator, is the last clause of the instrument of December 8, 1893 : "No one may go contrary or against this declaration, as it is based under conscience and justice; to me alone is reserved the right to do with this money as I deem proper." This language was not intended to limit but to make certain the rights of the beneficiaries, and it is an assertion by the declarant that he had the right to do as he chose with the bonds, and that third persons had no right to question the disposition which he made of them. The declarant, by this clause, did not reserve, or intend to reserve, to himself the right to dispose of the accruing interest on the bonds, which he declared belonged to the beneficiaries.

The Statute of Limitations is not a bar for several reasons : First, the testator became a trustee for the beneficiaries, and the statute did not begin to run until he had refused to execute the trust. Further than this we are unable to determine from the record in this case for how long a period the plaintiffs were permitted to recover the semi-annual interest, nor how much was recovered on account of the collections made by defendant and how much on account of the collections made by the testator. Had the defendant intended to raise the question that recovery for some part of the interest collected was barred by the statute, she should have shown how much was collected anterior to the six or ten years preceding the date of the commencement of the action.

It is urged that the judgment in the replevin action is a bar to this, on the theory that the first judgment is the measure of the defendant's liability to the plaintiffs for the conversion of the bonds. So it is. But the defendant's testator never refused to deliver these bonds to the plaintiffs, but held the securities as an agent, and the defendant did not convert the bonds until she refused to deliver them upon the demand of the plaintiffs, who in the first action could recover only the bonds and the damages for their unlawful detention, which damages began to accrue from the date of such detention. The collections of the interest by the testator and by the defendant before her refusal to deliver were not wrongful but legal acts, and their liability to account as agents for the collections formed no part of the claim for damages for the wrongful detention of the bonds.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.